UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT GIACIN,

       Plaintiff,

v.

LOCKHART'S BBQ, LLC and
DREW CIORA, individually,

       Defendants.

Case No.
Hon.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

## COMPLAINT AND JURY DEMAND

Plaintiff Vincent Giacin ("Plaintiff"), by and through his attorneys, HURWITZ LAW PLLC, states the following for his Complaint against Defendants Lockhart's BBQ, LLC and Drew Ciora ("Defendants"):

## INTRODUCTION

1. There is no exception to the protections afforded by the Americans with Disabilities Act (the "ADA"). Defendants clearly did not understand this when it rejected Plaintiff Vincent Giacin's job application to Lockhart's BBQ, stripping him of a work opportunity simply because he is deaf. Instead of engaging with Mr.

1

Giacin in the spirit of "bilateral cooperation," Defendants violated the ADA by cancelling Mr. Giacin's interview after denying his abundantly reasonable accommodation request. Defendants refused to interview Plaintiff explicitly because of his deafness. This is an action to correct disability discrimination in hiring practices by Lockhart's BBQ.

## PARTIES AND JURISDICTION

2. Plaintiff is an individual residing in Wesley Chapel, Pasco County, Florida.

3. Defendants are a southern-style barbecue restaurant with a principal place of business located in Royal Oak, Oakland County, Michigan.

4. Plaintiff's claims arise out of Defendants' violation of the Americans with Disabilities Act of 1991 42 U.S.C. § 12102(1).

5. This Court has general federal question jurisdiction pursuant to 28 U.S.C. § 1331.

6. Venue is proper under 28 U.S.C. § 1391 because this is the judicial district in which Defendants resides, and in which a substantial part of the events giving rise to the claims occurred.

7. Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") Charge of Discrimination alleging disability discrimination and received a "Right to Sue" letter on June 24, 2025.

## FACTUAL ALLEGATIONS

8. Plaintiff has been deaf since his childhood. Medical records from Johns Hopkins All Children's Hospital in Saint Petersburg, Florida, describe his condition as "severe to profound hearing loss in both ears."

9. Plaintiff has used hearing aids in both of his ears for the majority of his life.

10. In January 2024, Defendants placed a job posting on Indeed.com for the position of Lead Line Cook.

11. On January 29, 2024, Plaintiff submitted a job application in response to Defendants' job posting.

12. The job position description outlines the responsibilities of the Lead Line Cook position as including: "setting up and stocking stations with supplies; preparing food for service (e.g. chopping vegetables and meat, and preparing sauces); cooking menu items" and other duties typical of any comparable line cook position.

13. Plaintiff had previously worked in restaurants in comparable line cook positions.

14. Plaintiff's deafness had never presented an issue to his work in restaurant kitchens, and he had been able to work without accommodation. His ability to read lips allowed him to understand instructions from his supervisors.

3

15. Shortly after Plaintiff's application, Defendants scheduled an interview with Plaintiff.

16. Prior to the interview, Plaintiff informed Defendants via Indeed messaging that he is deaf.

17. In response to Plaintiff's message, Defendants stated: "Vincent, we do not have tickets that print to each station. With you being deaf that may be a problem if you can't hear the calls coming from the lead."

18. Defendants then stated: "Do you think that will be a problem for you? I'm happy to bring you in for the interview if you think you'd be able to get the calls."

19. Plaintiff responded: "I mean I read lips so if everyone can face directly at me while speaking to me then I should be okay, will everyone do that?"

20. Plaintiff effectively asked for an accommodation for his disability in the form of having people turn to face him while speaking to him.

21. Plaintiff's prior employers had provided him this accommodation and it had never presented an issue or hardship. Plaintiff's prior kitchen experience was in a "galley" style kitchen, in which cooking stations are laid in a line across a wall with the kitchen staff facing their stations and not each other. When tickets were called, Plaintiff's colleagues would simply turn to face him to make sure Plaintiff could read their lips.

22. In response to Plaintiff's request for accommodation, Defendants stated: "Unfortunately, the way our line is set up that is not possible. It is like a long galley line and the middle lead calling tickets calls fast and isn't always able to turn around. Sometimes you might be behind that person and would not be able to get those calls. I am sorry, but I'm not sure it would work with the way our line is set up."

23. Defendants then canceled Plaintiff's job interview.

24. Despite his disability, Plaintiff has significant experience working in restaurants.

25. Plaintiff has successfully worked in "galley" kitchens in the past.

26. Plaintiff's former employer easily accommodated Plaintiff's disability.

27. Plaintiff's hearing impairment has never affected his ability to perform his job responsibilities.

28. Plaintiff has consistently received positive feedback for his performance in his previous jobs.

29. Plaintiff was qualified for the position of Lead Line Cook.

30. Defendants certainly believed Plaintiff was qualified, as it offered Plaintiff an interview for the position on the same day it received his application.

31. Nonetheless, Defendants cancelled Plaintiff's interview and rejected his application immediately after being informed of Plaintiff's disability.

32. Defendants never made a good faith effort to accommodate Plaintiff's disability.

33. When Plaintiff suggested a reasonable accommodation, Defendants simply rejected his suggestion and did not attempt to seek further information that would have allowed Defendants to make a fully informed decision regarding his hire.

34. Defendants judged Plaintiff on his disability, rather than his ability to perform the essential functions of the position.

35. Plaintiff's request would not have posed an undue hardship.

36. Defendants had no legal basis upon which to deny Plaintiff's accommodation request.

**COUNT I**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**DISABILITY DISCRIMINATION–FAILURE TO ACCOMMODATE**

37. Plaintiff restates the foregoing paragraphs as set forth fully herein.

38. Plaintiff has a "disability" as defined in 42 U.S.C. § 12102(1).

39. Plaintiff was regarded as having a disability under 42 U.S.C. § 12102(3)(A).

40. Defendants were legally required to engage Plaintiff in an interactive process before cancelling his interview and rejecting his application.

41. Defendants discriminated against Plaintiff on account of his "actual or

perceived" disability when his application was rejected.

42. Defendants' actions were knowing and willful.

43. "Once an individual with a disability has requested provision of a reasonable accommodation, the employer must make a reasonable effort to determine the appropriate accommodation. The appropriate reasonable accommodation is best determined through a flexible, interactive process that involves both the employer and the individual with a disability." 29 C.F.R. app. § 1630.9.

44. An employee begins the accommodation process by notifying his employer of his disability; "at that point, an employer's liability is triggered for failure to provide accommodations." *Hendricks–Robinson v. Excel Corp.*, 154 F.3d 685, 693 (7th Cir. 1998)

45. After an employee has disclosed that he has a disability, the ADA requires an employer to "engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 805 (7th Cir. 2005).

46. Rather than collaborate with Plaintiff to find reasonable accommodation, Defendants chose to terminate Plaintiff's employment application.

47. Defendants did not seek further clarification from Plaintiff.

48. The employer's conduct is actionable "if it prevents identification of an

appropriate accommodation for a qualified individual." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1039 (7th Cir. 2013).

49. An employer fails to engage in good faith when "the interactive process . . . was still ongoing when the employer terminated the worker's employment." *Cash v. Siegel-Robert, Inc.*, 548 F. App'x 330, 336 (6th Cir. 2013)

50. Plaintiff has suffered feelings of depression, emotional and physical distress, mental and physical anguish, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

51. Plaintiff was placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## COUNT II
## VIOLATION OF THE PWDCRA
## DISABILITY DISCRIMINATION–DISCRIMINATION AND RETALIATION

52. Plaintiff restates the foregoing paragraphs as set forth fully herein.

53. Plaintiff had a "disability" as defined by PWDCRA.

54. Defendants perceived and/or regarded Plaintiff as having a physical disability. Plaintiff was therefore regarded as having a disability under MCL §

8

37.1103(d)(ii).

55. Plaintiff requested an accommodation to be faced directly when speaking to him.

56. Defendants were legally required to engage Plaintiff in an interactive process before making a decision regarding his hire.

57. Defendants failed to continually engage in an interactive process with Plaintiff despite reasonable accommodations being readily available since it is effortless to face someone directly when speaking.

58. Defendants discriminated against Plaintiff on account of his "actual or perceived" disability when his application was cancelled.

59. Defendants' actions were knowing and willful.

60. Plaintiff has suffered emotional and physical distress, mental and physical anguish, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future, as a direct and proximate result.

61. Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future, as a direct and proximate result of the violation.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a. Compensatory damages for monetary and non-monetary loss;

b. Exemplary and punitive damages;

c. Prejudgment interest;

d. Attorneys' fees and costs; and

e. Such other relief as in law or equity may pertain.

Respectfully Submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

Dated: August 25, 2025

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT GIACIN,

       Plaintiff,                 Case No.

v.                                     Hon.

LOCKHART'S BBQ, LLC AND
DREW CIORA, individually,

       Defendants.

---

Noah S. Hurwitz (P74063)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com

---

## DEMAND FOR TRIAL BY JURY

Plaintiff Vincent Giacin, by and through his attorneys, Hurwitz Law PLLC, hereby demands a trial by jury in the above-captioned matter for all issues triable.

                                          Respectfully Submitted,
                                          HURWITZ LAW PLLC

                                          */s/ Noah S. Hurwitz*
                                          Noah S. Hurwitz (P74063)
                                          *Attorney for Plaintiff*

Dated: August 25, 2025